MARY E. CANNEY *vs.* DAVID W. COREY AND RALPH E. BRIDGES.

Cumberland.   Opinion June 19, 1912.

*Bills and Notes.   Estoppel.   Liability of Parties.   Presumptions.*
*Principal and Surety.*

1.  In the absence of agreement to the contrary, the parties to a note are presumed to be liable on it according to the legal effect of the instrument.
2.  Defendant, an indorser of a note, who induced plaintiff to indorse by deceiving her into believing that by indorsing below his name she would become merely a surety for him, is estopped to deny that he assumed the relation of principal to plaintiff.

On report.   Judgment for plaintiff.   Plea, the general issue.

Action of assumpsit brought by Mary E. Canney against David W. Corey and Ralph E. Bridges, to recover the sum of $2548.63 paid by her to The Merchants Trust & Banking Company of Presque Isle, in satisfaction and discharge of an execution issued by the Supreme Judicial Court for the County of Aroostook, on a judgment in favor of said bank against said Corey, Bridges and Canney.

At the conclusion of the evidence, the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Payson & Virgin,* for plaintiff.

*Ralph E. Bridges,* pro se.

*Symonds, Snow, Cook & Hutchinson, George H. Smith and Charles F. Daggett,* for defendant Corey.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

WHITEHOUSE, C. J.   This case is presented to the Law Court upon a report of the evidence.   The question to be determined is the liability of the plaintiff and of the defendant Corey upon a

certain promissory note for $4600, dated December 12, 1907, signed by Ralph E. Bridges, the plaintiff's son, and one of the defendants, and on the back by the defendant Corey, and the plaintiff Mary E. Canney. The plaintiff claims that she is a surety for Bridges, the maker and for the defendant Corey, and hence has the right to be fully indemnified by Corey against any liability on the note. On the other hand Corey claims that he and Mrs. Canney are joint promissors for the accommodation of Bridges, and so as between themselves are co-sureties, and each liable for one-half of the note upon the default of the maker.

June 26, 1909, upon demand of the payee of the note, the defendant Corey paid one-half of the amount of it. Subsequently the payee recovered judgment against Bridges, Corey and Canney for the remaining one-half of the note, and after execution thereon had been issued and payment demanded, the same was paid by Mrs. Canney. This suit is brought by her to obtain reimbursement for such payment from the defendant Corey.

It is undoubtedly true that in the absence of an agreement to the contrary, the presumption of law is that the parties to a promissory note are liable on it according to the legal effect of the instrument, and the burden is on the plaintiff to show that there was an agreement or mutual understanding that Corey should assume the relations of principal as to her.

June 12, 1906, the defendant Bridges gave his promissory note to the defendant Corey for $4000 for capital stock of the Carter & Corey Company which he claims he purchased at the solicitation of the defendant Corey. This note was endorsed by Corey and discounted by the Trust Company at Presque Isle of which Bridges was treasurer, and thus in a position to grant favors to Carter & Corey Company. Bridges had already prior to that time purchased $10,000 of that stock at the solicitation, as he says, of Corey & Carter. At that time the defendant Corey was treasurer and a large stockholder of the Carter & Corey Company. The note for $4000 was not paid at maturity but renewed by a note made payable directly to the Trust Company and endorsed by Corey. When this note became due in June 1907, Bridges wished to borrow $600 more and to renew the note for $4600. From the cash that Bridges had put into the Company for all of the stock purchased

by him, Corey had received a benefit in the increased value of his own large holdings of stock and he readily consented to endorse a renewal note for $4600. But when this note became due in December, Bridges was not in financial condition to pay it, and Corey well knew it. Corey also knew that he himself was in the position of an original promissor on the note, and if the bank should refuse to renew it and proceed to enforce collection of the note at that time he would be obliged to pay the whole of it. There is no evidence in the case that he was not amply able to pay it. He testifies, it is true, that Bridges told him a few days before the maturity of the note that he had received a letter from Barker, the president of the bank, stating that he couldn't renew the note again without an additional endorser, but the letter is not produced, and Bridges says that the first information he had that the bank would require another endorser came from Corey himself. He says that Corey told him that the president had written to him that it would be satisfactory if Mrs. Canney would indorse the note.

There is no evidence that the bank questioned the financial responsibility of Mr. Corey. It appears from his testimony that the Carter & Corey Company had carried a large balance in 1907 as depositors in that bank. Corey was deeply interested in having the note renewed with an additional endorser who might relieve him of one-half of the amount of his liability on it. As far as appears in evidence, he was the only one specially interested in having Mrs. Canney endorse the note; but whether he requested the president of the bank to inform Bridges that the note would not be renewed without an additional endorser, does not expressly appear, but the evidence warrants the conclusion that the idea of having Mrs. Canney indorse the note was suggested by Corey.

The result was that Bridges arranged for an interview between Mr. Corey and Mrs. Canney. Bridges testifies that Corey then told Mrs. Canney in his presence, that "we only needed her name for a short time, for a few months, and that he would have,—that he would pay the note,—that the note would be paid before it became due June 12, 1908. Mrs. Canney replied that "it was impossible for her to endorse the note because if the note wasn't paid at maturity, she couldn't afford to pay, in fact, she didn't have the money to pay it and to take care of the sickness she had in the family. Mr. Corey seemed a little impatient that she should have any idea that

she would have to pay the note. He told her that there was no question of her having to pay the note, that it would be paid, taken care of before it became due, etc.

It is true that Mrs. Canney says in her testimony that Bridges told her, in answer to her continued protests against signing it, that she wouldn't have to pay but half of it in any event, as Mr. Corey's name was on there. And she replied that she couldn't "afford to pay half of it." Thereupon Mr. Corey repeated that there was no question of her having to pay the note, and said, "he would put his name above hers, so she wouldn't be called upon." Upon the strength of this final statement, she appears to have consented to endorse the note.

Mr. Corey does not deny in his testimony that he assured Mrs. Canney that "he would put his name above hers so that she wouldn't be called upon." He knew that she had no knowledge whatever of the previous history of their transactions in regard to this note and no acquaintance whatever with the law of promissory notes, and that she would believe what he said to her. In making that statement he must be presumed to have intended to create a belief in the mind of the plaintiff that he would so endorse the note as to protect her against any liability to pay any part of it. It was equivalent to an assurance that she was only required to sign as surety for him, as well as for Bridges, and a promise that as to her, he would assume the responsibility of a principal. He knew that she so understood it and believed it. His whole course towards her justified her in believing it. If he knew his statement as to the effect of placing his name above hers, to be false, he intended to deceive her. He did not know it to be correct, but recklessly stated as a fact what he did not know to be true. In either event he is estopped to deny that he assumed the relation of principal to the plaintiff, and should in justice be required to pay the full amount of the note.

The certificate must accordingly be,

> *Judgment for the plaintiff for $2548.63, with interest thereon from February 26, 1910.*